UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WALMART INC.,
WAL-MART STORES EAST, LP,
WAL-MART LOUISIANA, LLC,
WAL-MART STORES TEXAS, LLC,
WAL-MART STORES ARKANSAS, LLC,
WAL-MART PUERTO RICO, INC.,
WAL-MART.COM USA, LLC, and
WALMART APOLLO, LLC,

    Plaintiffs,

-against-

CAPITAL ONE, NATIONAL ASSOCIATION,

    Defendant.

Case No.: 23 Civ. 02942 (KPF)

## FIRST AMENDED COMPLAINT

Plaintiffs Walmart Inc., Wal-Mart Stores East, LP, Wal-Mart Louisiana, LLC, Wal-Mart Stores Texas, LLC, Wal-Mart Stores Arkansas, LLC, Wal-Mart Puerto Rico, Inc., Wal-Mart.com USA, LLC, and Walmart Apollo, LLC (collectively, "Walmart"), by and through undersigned counsel, bring this Complaint for a declaratory judgment and breach of contract against Defendant Capital One, National Association ("Capital One") by alleging as follows:

### NATURE OF THE CASE

1. Walmart, the world's largest retailer, entered into a contract with Capital One to issue Walmart-branded credit cards in the United States. As part of that contract, the parties agreed to numerous service requirements that Capital One was obligated to meet. Unfortunately, Capital One repeatedly failed to meet several of the most important requirements, which gave Walmart the right to terminate the contract and triggered certain post-termination contractual

1

obligations. Capital One, however, denies Walmart's termination right and has refused to fulfill its post-termination duties. Walmart thus files this case to seek a judicial declaration of its right to terminate the contract as a result of Capital One's service failures and to seek redress for Capital One's breach of its post-termination obligations.

2. In 2018, Walmart and Capital One entered into a contract—known as the Credit Card Program Agreement (with subsequent amendments, the "Contract")[1]—under which Capital One became the exclusive issuer of Walmart's private label and co-branded credit card program in the United States.

3. When Walmart and Capital One announced the agreement, they explained that the two companies "share a common goal of transforming the way they serve customers through digitally-led innovations. . . . Walmart and Capital One intend to offer highly innovative, digitally-enabled credit card products that deliver great value to customers and an exceptional cardholder experience."[2]

4. Consistent with this focus on customer service and delivering an exceptional cardholder experience, the Contract requires Capital One to provide carefully defined levels of service to Walmart and its customers. The Contract contains a list of what it refers to as Service Level Agreements, or "SLAs," which require Capital One to meet specific customer-service standards. Certain of those SLAs, which are of particular importance to the customer experience, are designated as "Critical SLAs." For example, when a customer needs a credit card replaced for

---

[1] Relevant portions of the Contract are attached hereto as Exhibit 1. The Contract contains a confidentiality provision governing disclosure of its terms, among other things. If necessary for adjudication, Walmart will of course provide to the Court a copy of the entire the Contract, subject to whatever confidentiality terms the Court deems appropriate.

[2] https://corporate.walmart.com/newsroom/2018/07/26/walmart-and-capital-one-sign-credit-card-program-agreement.

any reason, Capital One is obligated to mail that replacement card within five business days. The Contract includes a Critical SLA that requires Capital One to meet this five-day standard at least 99.9% of the time.

5. Unfortunately, Capital One was consistently unable to meet the customer-service standards required by the Contract. Capital One has admitted that in 2022 it failed to meet the minimum standard on at least five Critical SLAs. These failures include the replacement card Critical SLA identified above plus Critical SLAs regarding timely payment processing and transaction posting.

6. Under the Contract, if Capital One "fails to meet a Critical SLA, five or more times in a rolling 12 calendar month period . . . Walmart may terminate the Agreement." Contract, Schedule 4.13, Part III ¶ 5.

7. Because Capital One notified Walmart that it had failed to meet Critical SLAs five or more times in a rolling twelve-month period, Walmart terminated the Contract. But Capital One—without disagreeing that it failed to provide the required level of customer service, and contrary to the Contract's express language—has informed Walmart that it disputes Walmart's authority to terminate the Contract. Moreover, Capital One has refused to fulfill its post-termination obligations under the Contract.

8. Accordingly, pursuant to 28 U.S.C. § 2201, Walmart brings this action for a declaratory judgment that it was legally entitled to terminate the Contract. Walmart also brings claims for breach of contract and anticipatory breach of contract based on Capital One's failure to fulfill its post-termination obligations.

**THE PARTIES**

9. Plaintiff Walmart Inc. is a corporation organized under the laws of Delaware with its principal place of business in Bentonville, Arkansas. It is thus a citizen of both Delaware and

Arkansas.

10. Plaintiff Wal-Mart Stores East, LP, is an entity organized under the laws of Delaware with its principal place of business in Bentonville, Arkansas. It has two partners: WSE Management, LLC and WSE Investment LLC. The sole member of both LLCs is Wal-Mart Stores East, LLC. The sole member of Wal-Mart Stores East, LLC is Plaintiff Walmart Inc., which is a citizen of Arkansas and Delaware, as alleged in paragraph 9, *supra*. Plaintiff Wal-Mart Stores East, LP is thus a citizen of Arkansas and Delaware.

11. Plaintiff Wal-Mart Louisiana, LLC, is an entity organized under the laws of Delaware with its principal place of business in Bentonville, Arkansas. It has one member: Plaintiff Wal-Mart Stores East, LP, which is a citizen of Arkansas and Delaware, as alleged in paragraph 10, *supra*. Plaintiff Wal-Mart Louisiana, LLC is thus a citizen of Arkansas and Delaware.

12. Plaintiff Wal-Mart Stores Texas, LLC, is an entity organized under the laws of Delaware with its principal place of business in Bentonville, Arkansas. It has one member: Wal-Mart Real Estate Business Trust, which is a Delaware statutory trust whose sole beneficial owner is Wal-Mart Property Co., which itself is incorporated in Delaware with its principal place of business in Arkansas. Plaintiff Wal-Mart Stores Texas, LLC is thus a citizen of Arkansas and Delaware.

13. Plaintiff Wal-Mart Stores Arkansas, LLC, is an entity organized under the laws of Arkansas with its principal place of business in Bentonville, Arkansas. It has one member: Plaintiff Walmart Inc., which is a citizen of Arkansas and Delaware, as alleged in paragraph 9, *supra*. Plaintiff Wal-Mart Stores Arkansas, LLC, is thus a citizen of Arkansas and Delaware.

14. Plaintiff Wal-Mart Puerto Rico, Inc., is an entity incorporated in Puerto Rico with

its principal place of business in Arkansas. It is thus a citizen of Puerto Rico and Arkansas.

15. Plaintiff Wal-Mart.com USA, LLC, is an entity organized under the laws of California with its principal place of business in Bentonville, Arkansas. It has one member: Plaintiff Wal-Mart Stores East, LP, which is a citizen of Arkansas and Delaware, as alleged in paragraph 10, *supra*. Plaintiff Wal-Mart.com USA, LLC, is thus a citizen of Arkansas and Delaware.

16. Plaintiff Walmart Apollo, LLC is an entity organized under the laws of Delaware with its principal place of business in Bentonville, Arkansas. It has one member: Plaintiff Walmart Inc., which is a citizen of Arkansas and Delaware, as alleged in paragraph 9, *supra*. Plaintiff Walmart Apollo, LLC, is thus a citizen of Arkansas and Delaware.

17. Defendant Capital One is a national bank with its main office, as set forth in its articles of association, in McLean, Virginia, and is thus a citizen of Virginia pursuant to 28 U.S.C. § 1348.

## **JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because (i) there is complete diversity of citizenship between the parties, and (ii) more than $75,000, exclusive of interest and costs, is at stake, as the object of this dispute is a contract between Walmart and Capital One worth in excess of a billion dollars.

19. This Court has personal jurisdiction over Capital One because Capital One has transacted business in this State, has contracted to supply goods and services in this State, derives substantial revenue from goods consumed and services rendered in this State, and has engaged in conduct which it reasonably should have expected to have consequences in this State.

20. This Court additionally has personal jurisdiction over Capital One because it expressly submitted to the jurisdiction of this Court under the Contract. Specifically, the Contract

contains a forum-selection clause that reads as follows:

> The Parties agree that this Agreement and any matter arising from or in connection with it will be governed by and construed in accordance with the internal laws of the State of New York, without regard to its conflict of law principles. Each Party agrees that any legal action or proceeding arising out of or in connection with this Agreement shall be brought in United States District Court in the Southern District of New York (or, should such federal court lack competence to hear such legal action or proceeding, in a state court with competent jurisdiction in the Borough of Manhattan). Each Party consents to the exclusive jurisdiction of such court and waives any claim of lack of jurisdiction or forum non conveniens.

Contract § 12.11.

21. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendant Capital One resides in this judicial district pursuant to 28 U.S.C. § 1391(c)(2), as it is subject to the Court's personal jurisdiction with respect to this action. Further, the parties agreed in the Contract that any proceeding arising out of the Contract would be brought in United States District Court in the Southern District of New York.

## FACTUAL ALLEGATIONS

**A. Capital One's Failure To Meet The Parties' Bargained-For Customer Service Standards**

22. On or around July 23, 2018, Walmart and Capital One entered into the Contract. Under the Contract, Capital One agreed to provide credit card services to Walmart and its customers through the Capital One Walmart Rewards Credit Card Program (the "Program"). The Program extends credit through co-branded and private-label credit cards to qualified Walmart customers. The Program offers qualified Walmart customers (i) a co-branded card, the Capital One Walmart Rewards Mastercard, and (ii) a private-label card exclusively for Walmart purchases, the Walmart Rewards Card.

23. Pursuant to the Contract, Capital One agreed to provide customer service for the

Program in accordance with "Service Level Agreements" or "SLAs." Clear and carefully defined SLAs were a key component of the Contract, as SLAs define the level of service Walmart expects, lay out the metrics by which Capital One's quality of service is measured, and describe the consequences for failure to achieve those metrics. The SLAs are thus essential to preserving the quality customer service at the core of Walmart's brand.

> 24. Section 4.13 of the Contract states:
>
> Section 4.13 Service Level Agreement.
>
> (a) Bank shall comply with the SLAs defined in Schedule 4.13 ("SLAs").
>
> (b) As set forth on Schedule 4.13 and in a mutually agreed upon format within 15 days following the end of each month, Bank shall report to Walmart on Bank's performance during the preceding month under each of the SLAs. A "Major Service Failure" shall be determined in accordance with Schedule 4.13. As and to the extent set forth in Schedule 4.13, Bank shall make payments to Walmart in the event of a Major Service Failure. Walmart may terminate this Agreement as provided under Schedule 4.13.

Contract § 4.13. *See also* Contract at 1 (defining Capital One as "Bank").

25. The parties negotiated, and the Contract includes, many specific SLAs. The Contract categorizes each SLA as either "Critical" or "Non-Critical"—designations that reflect the parties' mutual understanding of which SLAs matter most. *See* Contract, Schedule 4.13. As relevant here, the Contract states that the following SLAs are included among the Critical SLAs:

| | Cardholder Service | | | |
|---|---|---|---|---|
| | Category | Service | Service Level Standard | Category |
| 14. | Transaction Posting | Timeliness of Posting | For transactions received on processing days, 99.9% will be posted by the close of the following posting day; remaining transactions will be posted via exception handling. Posting days include all days of the year except Sundays, Thanksgiving Day, Christmas Day and New Year's Day. | Critical |
| 16. | Card Replacements | Replacement Time | 99.9% of replacement Credit Cards mailed within 5 Business Days | Critical |
| 19. | Payment Processing | Posting Time | • Conforming payments: 97% posted within 1 Business Day of receipt<br>• Non-conforming payments: 99% processed and posted within 5 Business Days of receipt<br>• Electronic conforming payments: 99.9% of electronic conforming payments posted next Business Day | Critical |

*See* Contract, Schedule 4.13, Part II.

      26.     The Contract requires Capital One, on a monthly basis, to report its performance on each SLA:

> Within 15 days following the end of each calendar month during the Term, Bank shall provide a report to Walmart, in a mutually agreed upon format, on Bank's performance during the preceding calendar month under each of the SLAs set forth in Part II of this Schedule 4.13.

Contract, Schedule 4.13, Part I.

      27.     The Contract further gives Walmart the right to terminate the Contract in the event

8

of Capital One's repeated failure to meet Critical SLAs. Specifically, the Contract contains the following provision:

> Termination Right: If Bank fails to meet a Critical SLA, five or more times in a rolling 12 calendar month period (each such SLA failure, a "Major Service Failure"), Walmart may terminate the Agreement. In order for such termination to be effective, the notice of termination must be delivered within 90 days after Walmart learns of such fifth Critical SLA failure.

Contract, Schedule 4.13, Part III, ¶ 5 (the "Termination Right").

28. In 2022, Capital One reported that it failed no fewer than four Critical SLAs in a single twelve-month period:

   a. On August 10, 2022, Capital One reported that it failed Category 19 in July 2022 by (i) posting only 55.24% of conforming payments within one business day of receipt (as opposed to the SLA requirement of 97%), and (ii) posting only 76.4% of non-conforming payments within five business days of receipt (as opposed to the SLA requirement of 99%).

   b. On September 16, 2022, Capital One reported that it failed Category 16 in August 2022 by mailing only 98.01% of replacement credit cards within five business days (as opposed to the SLA requirement of 99.9%).

   c. On September 16, 2022, Capital One reported that it failed Category 19 in August 2022 by (i) posting only 86.4% of conforming payments within one business day of receipt (as opposed to the SLA requirement of 97%), and (ii) posting only 87.89% of non-conforming payments within five business days of receipt (as opposed to the SLA requirement of 99%).

   d. On December 15, 2022, Capital One reported that it failed Category 14 in November 2022 by posting only 99.83% of transactions by the close of the following posting day (as opposed to the SLA requirement of 99.9%).

29. Walmart learned of an additional Critical SLA failure in January 2023, shortly before PricewaterhouseCoopers was to begin an audit of Capital One's performance on the Contract. Specifically, on or about January 11, 2023, Capital One belatedly admitted that it had failed Category 19 in June 2022 by posting only 89.87% of conforming payments within one business day of receipt, as opposed to the SLA requirement of 97%, and by posting only 92.13%

of non-conforming payments within five business days of receipt, as opposed to the SLA requirement of 99%. Capital One failed to report these Critical SLA 19 misses to Walmart during its contractually required monthly reporting.

30. Despite its delays in reporting to Walmart, Capital One's representatives ultimately admitted in writing to at least five Critical SLA failures in 2022. In a February 2, 2023 response to an information request from Walmart and PwC, Capital One stated that "***[f]or Critical SLAs in 2022, Capital One missed the Payment Processing SLA three times and the Card Issuance and Transaction Posting SLAs once each***."

31. Even though it has admitted to five separate Critical SLA failures in the past rolling twelve months, Capital One has taken the position that Walmart's Termination Right was not triggered and that Walmart had no right to terminate the Contract. On April 2, 2023, Capital One informed Walmart of that position in writing.

32. On April 6, 2023, Walmart sent Capital One a notice that it was terminating the Contract pursuant to Schedule 4.13 of the Contract. This termination notice was sent within ninety days of Walmart's discovery of the June 2022 Critical SLA failure and is therefore timely.

**B.  Capital One's Failure To Comply With The Contract's Post-Termination Provisions**

33. Walmart's termination of the Contract triggered certain post-termination rights and obligations designed to allow Walmart to seamlessly transfer its credit card portfolio to a new party. Contract § 10.5.



■       The post-termination provisions involve a time-sensitive, multi-step process. ■

▪       

▪       

▪       

40.     Capital One's failure to fulfill its post-termination obligations has interfered with Walmart's ability to transfer its credit card Portfolio to a new party, hindering Walmart's ability to provide uninterrupted credit card services to its existing and future customers.





43. In a letter to the Court dated April 25, 2023, Capital One, through its counsel, stated: "Capital One disputes that any right to early termination of the Agreement has been triggered." ECF No. 43 at 1.

44. Further, in correspondence delivered after the close of business on April 27, Capital One informed Walmart that because, in Capital One's view, the Contract was not validly terminated, ███████████████████████████

45. Accordingly, Capital One unambiguously indicated that it has repudiated, and will continue to repudiate, its time-sensitive post-termination contractual obligations, which will cause Walmart to suffer monetary damages and irreparable harm, such as diminishment of customer goodwill and its business reputation, and loss of the ability to market the Portfolio to putative purchasers.

## FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT)

46. Walmart repeats and realleges the allegations above, as if fully restated herein.

47. Pursuant to the Declaratory Judgment Act of 1934, 28 U.S.C. § 2201–02, this Court is authorized to issue a declaratory judgment.

48. An actual and justiciable controversy presently exists between Walmart and Capital

One as to whether Capital One's actions have triggered Walmart's Termination Right under the Contract.

49. A judicial determination is necessary and required to adjudicate the parties' respective rights and obligations.

50. Under the Contract, if Capital One "fails to meet a Critical SLA, five or more times in a rolling 12 calendar month period …, Walmart may terminate the Agreement."

51. In February 2023, Capital One admitted in writing that it failed to meet a Critical SLA at least five times during a rolling twelve-month period.

52. On April 2, 2023, Capital One informed Walmart in writing of its position that Walmart's Termination Right was not triggered.

53. On April 6, 2023, Walmart timely sent Capital One notice that Walmart was terminating the Contract pursuant to Section 4.13 and Schedule 4.13 of the Contract.

54. Walmart is thus entitled to a declaration pursuant to 28 U.S.C. § 2201 that it was legally entitled to, and legally did, terminate the Contract.

**SECOND CAUSE OF ACTION**
**(BREACH OF CONTRACT)**

55. Walmart repeats and realleges the allegations above, as if fully restated herein.

56. Walmart and Capital One are parties to a valid and enforceable contract.

57. Walmart performed all material obligations set forth in the Contract.



14

61. Walmart has suffered monetary damages as a direct and proximate result of Capital One's breach of Section 10.5(b)(i) of the Contract.

███ ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

**THIRD CAUSE OF ACTION**
**(ANTICIPATORY BREACH OF CONTRACT)**

63. Walmart repeats and realleges the allegations above, as if fully restated herein.

64. Walmart and Capital One are parties to a valid and enforceable contract.

65. Walmart has performed all material obligations set forth in the Contract and remains ready, willing, and able to perform its post-termination obligations under the Contract.

66. In written correspondence dated April 25, 2023, and April 27, 2023, Capital One unambiguously and unequivocally declared its intention not to perform its post-termination contractual obligations.

67. Walmart has suffered and will continue to suffer harm as a direct and proximate result of Capital One's anticipatory breach of its post-termination contractual obligations, including monetary damages and irreparable harm, such as diminishment of customer goodwill and its business reputation, and loss of the ability to market the Portfolio to putative purchasers.

**DEMAND FOR RELIEF**

WHEREFORE, Walmart respectfully requests that this Court:

A. Order a speedy hearing pursuant to Fed. R. Civ. P. 57;

B. Issue the declaratory judgment outlined in Paragraph 54 of this Amended Complaint;

C. Award Walmart monetary damages in an amount determined by the Court;

D. Order Capital One to specifically perform its post-termination contractual obligations set forth in Sections 10.5, 10.6, 10.7, and 10.8 of the Contract;

E. Award Walmart all costs and fees incurred in prosecuting this Complaint and enforcing the terms of the Contract; and

F. Grant such other and further relief as this Court deems just and proper.

Dated: May 2, 2023

Respectfully submitted,

BOIES SCHILLER FLEXNER LLP

By: */s/ Matthew L. Schwartz*

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
Tel.: (202) 237-2727
jpanuccio@bsfllp.com

Matthew L. Schwartz
Marc Ayala
Sabina Mariella
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
mlschwartz@bsfllp.com
mayala@bsfllp.com
smariella@bsfllp.com

Jason Hilborn (*pro hac vice*)
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
Tel.: (954) 377-4206
jhilborn@bsfllp.com

*Attorneys for Plaintiffs Walmart Inc., Wal-Mart Stores East, LP, Wal-Mart Louisiana, LLC, Wal-Mart Stores Texas, LLC, Wal-Mart Stores Arkansas, LLC, Wal-Mart Puerto Rico, Inc., Wal-Mart.com USA, LLC, and Walmart Apollo, LLC*